NO. 25-7930

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE APPLE IPHONE ANTITRUST LITIGATION

ROBERT PEPPER; EDWARD LAWRENCE; STEPHEN H. SCHWARTZ,

*Plaintiffs-Appellants*,

*v.*

APPLE, INC.,

*Defendant-Appellee*.

On Appeal from an Order of the
United States District Court for the Northern District of California
(Case No. 4:11-cv-6714-YGR) (Hon. Yvonne Gonzalez Rogers)

**BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE SUPPORTING DEFENDANT-APPELLEE APPLE INC. AND AFFIRMANCE**

Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

*Counsel for Amicus Curiae Washington Legal Foundation*

August 19, 2026

## RULE 26.1 DISCLOSURE STATEMENT

Washington Legal Foundation has no parent company, issues no stock, and no publicly held company owns a ten percent or greater interest in it.

# TABLE OF CONTENTS

Page

RULE 26.1 DISCLOSURE STATEMENT ..... ii
TABLE OF AUTHORITIES ..... iv
INTEREST OF AMICUS CURIAE ..... 1
INTRODUCTION & SUMMARY OF ARGUMENT ..... 2
ARGUMENT ..... 7
I. PLAINTIFFS CANNOT PROVE, WITH COMMON EVIDENCE AND BEFORE TRIAL, THAT THE CLASS WAS INJURED ..... 7
A. Antitrust injury is an element of the claim, not an accounting detail for distribution ..... 7
B. *Olean* tolerates only a class whose uninjured members can be excluded through common proof, and Plaintiffs offer none ..... 10
C. Deferring proof of injury to "claims administration" inverts the order of proof and abridges Apple's rights ..... 14
D. *Briseno* is no answer: this is an injury problem, not an ascertainability problem ..... 16
II. MERE EXPOSURE AND LACK OF CHOICE ARE NOT ANTITRUST INJURIES, AND ARTICLE III REQUIRES EACH MEMBER'S CONCRETE HARM ..... 17
A. Antitrust injury means harm of the type the antitrust laws forbid—proven, not presumed ..... 18
B. Article III precludes a damages class salted with uninjured members ..... 21
III. CERTIFYING A SPRAWLING NO-INJURY CLASS WOULD DISTORT THE CIVIL JUSTICE SYSTEM ..... 23
CONCLUSION ..... 26
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 15

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 1

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019) .......... 20

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 23

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) .......... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 23

*Blough v. Holland Realty, Inc.*,
574 F.3d 1084 (9th Cir. 2009) .......... 19

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) .......... 17, 19

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 4, 5, 16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) .......... 7, 18

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......... 22

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) .......... 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 9

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 23

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
343 F.3d 1000 (9th Cir. 2003) .......... 19

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) .......... 21, 22

*Hirsh v. Martindale-Hubbell, Inc.*,
674 F.2d 1343 (9th Cir. 1982) .......... 17

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) .......... 15

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) .......... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) .......... 7

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) .......... 11

*In re Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) .......... 23

*Lab'y Corp. of Am. Holdings v. Davis*,
605 U.S. 327 (2025) .......... 5, 24–25

*Leyva v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) .......... 8, 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .......... *passim*

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......... 1

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979) .......... 18

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

*Ruiz Torres v. Mercer Canyons, Inc.*,
835 F.3d 1125 (9th Cir. 2016) .......... 20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 24

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 19

*Speerly v. Gen. Motors, LLC*,
143 F.4th 306 (6th Cir. 2025) (en banc) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 5, 6, 15, 21, 22, 25

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 10, 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 1, 12, 15, 22

*Williams v. Apple, Inc.*,
338 F.R.D. 629 (N.D. Cal. 2021) .......... 5, 16, 17

**Statutes:**

15 U.S.C. § 15(a) .......... 7, 18

28 U.S.C. § 2072(b) .......... 15

**Rules:**

Fed. R. Civ. P. 23 .......... *passim*

Fed. R. Evid. 702 .......... 2, 11

**Other Authorities:**

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973) .......... 23

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as an amicus curiae in unwieldy class actions to vindicate Rule 23 and Article III. *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc).

So much class litigation ignores the reality that many claims simply aren't amenable to classwide resolution. Most litigation proceeds at the behest of only individual plaintiffs. That is why Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). When the "inherent tension" between "representative suits" and our "deep-rooted historic tradition that everyone should have his own day in court" runs too high, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999), the privilege of

* No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission. All parties consent to the filing of this brief.

bringing a class action must give way and the right to a fair trial must stand firm. That balanced rule easily resolves this case.

## INTRODUCTION & SUMMARY OF ARGUMENT

Rule 23 runs on proof, not promises. So when a district court certifies a class on the strength of the plaintiffs' express assurances that they will be able to prove classwide injury with reliable common evidence, and the plaintiffs fail to deliver, the court must decertify. That is what the law requires, and that is exactly what happened here.

This appeal asks the Court to reinstate certification of a class of nearly 200 million people and send it to a single classwide trial—a class in which more than ten million members suffered no net overcharge at all. Plaintiffs cannot sort the injured from the rest. The district court rightly excluded, under Rule 702, the only expert testimony offered to do that sorting. On appeal, Plaintiffs tell this Court it "need not address" that exclusion—their answer is that the sorting was never required at all, so the excluded method may simply return after the verdict as "a component of damages distribution." Pls.' Br. 42–43 n.15.

That gap is not a wrinkle in an otherwise certifiable class; it is the whole case. By Plaintiffs' own model, a lower commission would have left prices flat, or pushed them higher, for entire categories of purchases: free

and ad-supported apps, in-app offerings that do not shift in price, and other digital goods a developer can supply at no marginal cost. 8-ER-1522 ¶ 55. Aggregate the accounts to people, and Plaintiffs' own numbers concede that millions never paid an overcharge—a class "upwards of 200 million," of whom between 5.1% and 5.9% "had no positive net overcharges." Pls.' Br. 24, 40.

That's more than ten million uninjured class members. And that is Plaintiffs' most favorable estimate. Correct their models or improve certain assumptions, and the numbers go up—with some previously "uninjured" becoming "injured" but many more previously "injured" becoming "uninjured."

Ten million people is no rounding error. It is a metropolis of uninjured strangers folded into a damages class that Plaintiffs have no reliable way to police. Certifying that class for trial would set up precisely what both the antitrust laws and Article III forbid: an aggregate judgment that reaches millions who suffered no injury at all.

Start with predominance. *Olean* asks whether the plaintiffs have offered evidence "capable of establishing antitrust impact for the class as a whole," *Olean*, 31 F.4th at 675, and instructs that when "individualized questions relate to the injury status of class members," the court must

decide whether those questions swamp the common ones. *Id.* at 668. Plaintiffs read that command backwards. Their model generates the very individualized injury questions that defeat predominance. What matters most here is not *how much* each member was harmed, but whether each member was harmed *at all*. E

Plaintiffs wave away that gap as a mere "matching" problem, one for post-trial claims administration to mop up. But relabeling a fatal flaw cannot cure it. Whether a given consumer paid an overcharge goes to antitrust injury—an element of the claim that every class member must prove, not a clerical question of how to cut the checks. And a model that cannot separate the injured from the uninjured does not prove antitrust injury in one stroke as Rule 23 insists; it proves the opposite—that injury here is irreducibly individualized.

*Briseno* offers them no reprieve. It holds that Rule 23 imposes no freestanding administrative-feasibility requirement for finding absent members and paying their claims. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017). It says nothing about whether Plaintiffs can prove, with common evidence, that those members were injured to begin with. The district court didn't decertify because the class is too hard to locate, but because Plaintiffs lack common proof of injury. That's an

*Olean* problem, not a *Briseno* one, and one that *Williams v. Apple, Inc.*, 338 F.R.D. 629 (N.D. Cal. 2021), a case about who paid for a subscription, does nothing to solve.

Sensing the gap in their proof, Plaintiffs next try to change what injury means. They retreat to the theory that mere "exposure" to Apple's conduct, or a diffuse "lack of choice," is an injury common to everyone. That theory would read the injury element out of the Clayton Act. Antitrust injury is not mere exposure; it is harm of the kind the antitrust laws were meant to remedy—here, an overcharge—proven for each claimant rather than presumed for the market at large. And because every class member must have Article III standing to recover damages, a damages class with millions of admittedly unharmed members cannot stand. *TransUnion*, 594 U.S. at 431.

The Supreme Court granted review last year to decide whether a damages class may ever be certified when it contains uninjured members, but dismissed the case as improvidently granted. *See Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327 (2025) (dismissing writ as improvidently granted); *id*. at 328–34 (Kavanaugh, J., dissenting). That question returns here in stark form—in the Nation's largest circuit, on a class of roughly 200 million, with a trebled exposure of $60 billion. If a class this riddled

with millions of uninjured members may be certified because the *percentage* of uninjured is deemed sufficiently small, no consumer class will ever be too broad, and that settlement hammer will fall on conduct that caused those members no harm at all. This Court should confront those consequences of certification squarely—settlement pressure that dictates rather than bargains, costs shifted to consumers and workers, and recoveries diluted for the genuinely injured.

None of this asks the Court to make new law. *Olean* and *TransUnion* already supply the answer, and the district court applied them faithfully. Plaintiffs' only rejoinder is the same move performed four different ways, each a substitute for proof of injury—promising to supply proof later, framing the uninjured as a percentage rather than millions of members, relabeling that fatal flaw as a "matching" problem, and pressing a novel theory of harm that would read the injury element out of the Clayton Act. But Rule 23 accepts no substitutes. This Court should affirm—and say plainly that certification rests on proof, not promises.

# ARGUMENT

## I. PLAINTIFFS CANNOT PROVE, WITH COMMON EVIDENCE AND BEFORE TRIAL, THAT THE CLASS WAS INJURED.

### A. Antitrust injury is an element of the claim, not an accounting detail for distribution.

Begin with first principles. The Clayton Act lets a plaintiff recover for only injury to its "business or property," 15 U.S.C. § 15(a), and that injury—antitrust injury—is an element of every member's claim. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The class device does not dilute that requirement, nor can it. Each member must still satisfy it.

True, certification itself does not demand trial-ready proof of classwide impact—but it demands proof of something Plaintiffs no longer possess: a showing, made by a preponderance and tested by rigorous analysis, that impact—the fact of injury—is *capable of proof* at trial through evidence common to the class. *See Olean*, 31 F.4th at 664–66; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252–53 (D.C. Cir. 2013). Whatever slack the capable-of-proof standard allows at the certification stage has run out where the court conditions certification on delivery, the deadline arrives, and nothing is delivered.

Plaintiffs' model fails that test on its own terms. It assigns a but-for price to each transaction, and for billions of those transactions it predicts that a lower commission would have left the price unchanged or driven it higher. These price predictions are not a handful of unlucky outliers; they are whole categories of app and in-app purchases the model itself flags—free and ad-supported apps, in-app offerings that do not shift in price, and other digital goods a developer supplies at no marginal cost—for which a lower commission changes nothing the consumer pays or makes it worse.

The model thus does not merely leave injury unproven for those members; it affirmatively predicts they were never injured. The only way to learn whether a given person nets out to a positive overcharge is to gather all of her transactions, across all her accounts, and add them up. Plaintiffs concede as much: a member's net overcharge, they acknowledge, can be calculated only by identifying all of that member's purchases—across multiple Apple IDs—and adding up overcharges to determine which are positive and which are negative. Pls.' Br. 13. That is the very calculus the district court rightly found they could not reliably perform. 1-ER-22–23, 1-ER-26.

Plaintiffs answer with *Leyva* and its line of cases, which hold that "the presence of individualized damages cannot, by itself, defeat class

certification." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Those cases all presuppose a common injury and ask only how to measure it. Here the antecedent question, injury *vel non*, is itself individualized, and *Olean* drew precisely that line. Certification fails, this Court says, where "individualized questions relate to the injury status of class members" and predominate over the common ones. *Olean*, 31 F.4th at 668–69. Plaintiffs cannot recast a failure to prove *whether* members were harmed as a permissible dispute over *how much*.

Besides, even a damages model "must measure only those damages attributable to" the plaintiffs' theory of liability, and one that fails to do so "cannot possibly establish that damages are susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Calculating what each individual overcharged customer lost would require separate proof. Such individualized questions, the Supreme Court has warned, "will inevitably overwhelm questions common to the class." *Id.* at 34. A class that lumps the overcharged together with millions who weren't does not measure injury caused by Apple's conduct. A crowd of antitrust plaintiffs clamoring to average their overcharge injuries calls to mind the statistician's quip about a man with his head in an oven and his feet in a freezer who insists that, on average, he's quite comfortable.

*Tyson Foods* does not help Plaintiffs. They invoke it for the rule that a class is proper when "the same evidence will suffice for each member to make a prima facie showing." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). But the representative sample there was permissible precisely because each employee *could* have relied on it to prove his own individual claim. *Id.* at 455. Here, Plaintiffs' model does the opposite for millions of members; run it, and it establishes that they have no claim at all. That is exactly why Plaintiffs were forced to voluntarily dismiss the claims of one of the four named plaintiffs, Edward Hayter, with prejudice pending summary judgment. 1-ER-3 n.3.

Try as they might, evidence that disproves injury for a large slice of the class is not "the same evidence" that proves it for the rest. No amount of fast talking can change that.

### B. *Olean* tolerates only a class whose uninjured members can be excluded through common proof, and Plaintiffs offer none.

While *Olean* rejected a rigid rule barring a class with more than a de minimis number of uninjured members, it imposed a demanding inquiry in that rule's place—not a free pass or certification of classes with uninjured members. A court must still "determine after rigorous analysis whether the common question predominates over any individual

questions, including individualized questions about injury or entitlement to damages," and must ask whether the class is "defined too broadly to permit certification." *Olean*, 31 F.4th at 669 & n.14. *Olean* itself distinguished *Rail Freight* on exactly this footing: certification is improper where plaintiffs "propose[] no further way—short of full-blown, individual trials"—to determine who was injured. *Id.* at 669 n.13; *see In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 624–26 (D.C. Cir. 2019). That is this case. *Olean* is Apple's authority, not Plaintiffs'.

Plaintiffs prefer to speak in percentages, but percentages avoid numbering people, and here they are legion: more than ten million class members, on Plaintiffs' own accounting, paid no net overcharge. True, the district court preferred percentages to headcounts, see 1-ER-27 n.21; but the quarrel is academic, because the court also found that Plaintiffs' model cannot "reliably limit the percentage of uninjured class members"—so count heads or count percentages; either way, the class fails. 1-ER-28. Worse, Plaintiffs cannot sort the injured with any measured confidence, because their matching effort produced no error rate, no confidence interval, and no way to test the result. 1-ER-7, 1-ER-14–16. That is why the district court properly excluded the testimony under Rule 702. 1-ER-22–23.

Plaintiffs call that ruling erroneous, but they do not ask this Court to reinstate the testimony for trial. Instead, they ask only that the exclusion be vacated as unnecessary, because—they insist—Rule 23 doesn't require any sorting before trial. Pls.' Br. 42–43 n.15. They treat that answer as license to wave their six-percent figure through, but it cuts the other way. Without common, testable proof of who was injured, there is no basis in the record to call injury a common question at all.

Plaintiffs contend that any uncertainty is Apple's doing, and that Apple never proved that the uninjured share is higher than their own figures. But that inverts the burden. It is *Plaintiffs* who must "affirmatively demonstrate" predominance, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And the defect is not the precise percentage—it is that Plaintiffs offer no reliable, testable method to sort the uninjured at all. Whatever else Apple's data might show, it cannot convert an excluded methodology into an admissible one.

Nor can Plaintiffs escape the terms on which their own class was maintained. They now tell this Court that the district court forced the matching exercise on them "over their objection," Pls.' Br. 2, and that its order "offered little explanation" for the requirement. *Id.* at 20–21. The record refutes that account. The district court certified the class while

expressly "accept[ing] plaintiffs' representation that Professor McFadden can" both "match the Apple identification numbers he has with actual consumers" and "limit the percentage of unharmed class members"—and it warned that "[s]hould Professor McFadden's model fail to do both," it would "consider whether modification or decertification is appropriate." 2-ER-108.

Indeed, Plaintiffs "affirmed to the Court that Professor McFadden will calculate both aggregate and individual damages before trial with the full transactions data of the entire App Store," 2-ER-131 n.17, and "represented to the Court that, once Apple produced the rest of its app transactional data, Professor McFadden will be able to calculate the exact extent of injury suffered by each class member." 2-ER-133. Plaintiffs made a similar promise to this Court in successfully opposing Apple's 23(f) petition challenging the certification of the class. No. 24-875, Dkt. 12.1 at 18 n.3.

As the district court later explained, it "allowed consumer plaintiffs to proceed, given their assurances." 1-ER-5. The condition was not idle; it answered the court's recurring worry that the model could not tell the injured from the uninjured. When the plaintiffs' flawed model came up empty, the court did exactly what it said it would do. A district court that

accepts a party's assurances, certifies on the strength of them, and holds them to account when that party fails to carry its burden is not abusing its discretion; it is exercising it.

When a proposed class "merely could contain individuals who don't have standing," a court should run "a standard Rule 23 predominance inquiry" and ask whether weeding out the uninjured "involve[s] individual questions"; if it does, the court "faces headwinds" because "the individual assessments would predominate." *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 345 (6th Cir. 2025) (en banc) (Thapar, J., concurring); *see also Olean*, 31 F.4th at 669 & n.14. If this Court undertakes that inquiry, the record will supply the same answer the district court arrived at here.

### C. Deferring proof of injury to "claims administration" inverts the order of proof and abridges Apple's rights.

Plaintiffs' next move is a sequencing trick: Try liability now, and identify the truly injured later, in claims administration. That turns the trial on its head. A jury cannot award a classwide verdict on a $20 billion aggregate, 1-ER-15—trebled to $60 billion—only for the parties to later discover, claimant by claimant, whether each claimant ever had a claim. Put differently, liability cannot be tried now because what Plaintiffs are proposing to defer is properly part of the liability trial itself. Sorting the

injured from the uninjured would demand exactly the kind of individualized determination that predominance forbids, because "[t]he need to identify those individuals will predominate and render an adjudication unmanageable." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018).

Two settled corollaries confirm the point. *First*, the Rules Enabling Act forbids using Rule 23 to "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997), yet an aggregate verdict that necessarily pays the unharmed would do just that, expanding an antitrust right that compensates only those actually overcharged.

*Second*, a defendant keeps its right to contest each claimant's injury, for a class cannot be certified "on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart*, 564 U.S. at 367. And a court must be able to ensure that a damages award reaches only injured class members, and where it cannot, the award cannot stand. *See TransUnion*, 594 U.S. at 431; *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring). Plaintiffs offer no such assurance—only another promise to improvise one after a protracted trial and potentially multibillion-dollar verdict. Pls.' Br. 43 n.15. But if they could do so then,

why can't they do so now? That is the one question their brief never attempts to answer. Post-trial sorting is not administration; it is the merits, deferred and then quietly denied.

### D. *Briseno* is no answer: this is an injury problem, not an ascertainability problem.

Plaintiffs' last resort is that the district court smuggled in an "administrative feasibility" requirement this Court rejected in *Briseno*. It did no such thing. *Briseno* holds only that Rule 23 does not condition certification on an administratively feasible way to identify absent class members. 844 F.3d at 1123. That concern was logistical—how to find members and pay them without receipts. The concern here is substantive—whether Plaintiffs can prove, with common evidence, that the members were injured at all. A member who has lost her receipt may still have been overcharged, and a claims process can confirm that she belongs in the class. *Id.* at 1132–33. But a member whom Plaintiffs' own model marks as having paid no overcharge has no claim to confirm, and no affidavit can conjure an injury the model says never happened.

*Williams v. Apple* proves the point by contrast. The only question there was which member of a family plan "paid for the subscription"—a bookkeeping matter of identifying who belongs in the class, readily

answered by affidavit. 338 F.R.D. at 645–46. No one doubted that the subscribers were overcharged. Here, Plaintiffs' own model confirms that millions suffered no net overcharge, and Plaintiffs have no common way of sorting them from those who did. Plaintiffs would borrow a rule about locating members to excuse their failure to prove that those members have claims. That is not ascertainability; it is the missing proof of a classwide injury—an inquiry *Briseno* never undertakes, let alone answers.

## II. MERE EXPOSURE AND LACK OF CHOICE ARE NOT ANTITRUST INJURIES, AND ARTICLE III REQUIRES EACH MEMBER'S CONCRETE HARM.

Cornered on proof, Plaintiffs fall back on the claim that everyone was "exposed to" Apple's monopoly and so everyone was injured—by higher prices, diminished innovation, or a diffuse "lack of choice." But this Court has declined to treat constrained choice, standing alone, as a basis for antitrust liability. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012) (intrusion "upon consumers' freedom of choice by compelling the purchase of unwanted products" is not "a sufficient independent basis for antitrust liability") (quoting *Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1349 n.19 (9th Cir. 1982)). Plaintiffs' new theory of harm thus substitutes redefinition for proof: call everyone injured, and no one need prove it. It also does violence to Article III,

because it would allow a damages class to proceed despite the presence of millions of members who suffered no concrete overcharge—the only antitrust injury Plaintiffs pleaded in this case.

### A. Antitrust injury means harm of the type the antitrust laws forbid—proven, not presumed.

The Clayton Act compensates injury only to "business or property" flowing from the anticompetitive effects of the challenged conduct. 15 U.S.C. § 15(a). That means actual economic harm—here, payment of an overcharge caused by the violation. *Brunswick Corp.*, 429 U.S. at 489; *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 n.8 (1990) (refusing to credit "broad allegations of harm to the 'market' as an abstract entity").

"Business or property" is not surplusage. "Money, of course, is a form of property," and a consumer who buys goods for personal use "is injured in 'property' when the price of those goods or services is artificially inflated by reason of the anticompetitive conduct complained of." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39 (1979). But someone who never paid an overcharge—or who benefited on net from the conduct—has suffered no harm the law recognizes. Even non-buyers "priced out of the market" who never "pay the overcharge" lack antitrust standing because any claim to

such harm is "highly speculative." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 448–49 (9th Cir. 2021).

This Court has applied the same logic to theories of "lack of choice"—in a case about Apple's own ecosystem. In *Somers v. Apple, Inc.*, Apple's FairPlay DRM tied iTunes songs to iPods, and the plaintiff claimed that her lost "ability to freely play her digital music purchases as she saw fit" was itself an antitrust injury. 729 F.3d 953, 966 (9th Cir. 2013). This Court disagreed: "[L]imitation of consumer choice, in itself, does not amount to 'antitrust injury.'" *Id.* And because her limited ability to *play* her music did not restrict her ability to *buy* music from competing sellers, her lost flexibility was "not comparable to the loss of 'free choices between market alternatives'" that this Court recognizes as antitrust injury. *Id.* at 967 (quoting *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003)).

In any event, a lost-choice theory collapses into a price theory. When a buyer must take an unwanted product to obtain the one he wants, this Court has explained, that is "typically the equivalent of a higher price" for the product he wanted. *Brantley*, 675 F.3d at 1203 (quoting *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089–90 (9th Cir. 2009)). So even on Plaintiffs' own framing, the harm is denominated in dollars, transaction

by transaction—which returns them to the common proof of overcharge they cannot supply.

Overcharge is also the only injury Plaintiffs ever pleaded in this litigation, 1-ER-3 (describing Third Am. Compl. ¶¶ 4–6, 9, 47)—and the Supreme Court took them at their word. *Apple Inc. v. Pepper*, 587 U.S. 273, 287 (2019) (confirming Plaintiffs' standing to seek "the full amount of the unlawful overcharge that they paid to Apple"). "Lack of choice" made its debut only in opposition to decertification, in what the district court aptly called a "last-ditch effort" to salvage the class. 1-ER-27.

Plaintiffs' reliance on *Ruiz Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016)—a wage dispute about informational harm under the Agricultural Worker Protection Act—is misplaced; it cannot address the antitrust injury requirement because it is not an antitrust case at all. Having never moved to certify an injunctive class, *see* 1-ER-27, Plaintiffs must prove injury, and the only injury they pleaded is an overcharge. A consumer who paid no overcharge has nothing to recover and does not belong in a class with those who did.

### B. Article III precludes a damages class salted with uninjured members.

The injury gap is a constitutional one as well, and it supplies another reason to affirm. "Every class member must have Article III standing in order to recover individual damages," because Article III "does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion*, 594 U.S. at 431. Standing, the Supreme Court has stressed, "is not dispensed in gross." *Id.* A damages class whose membership—on Plaintiffs' own model—includes millions who suffered no concrete overcharge cannot honor that command through a single classwide verdict.

Plaintiffs respond that standing can be litigated later, at summary judgment, under *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026). That is the claims-administration gambit in a different guise—and it is self-defeating. If standing must be resolved member by member precisely because the class is salted with the uninjured, then individual questions predominate now, at certification. *See Olean*, 31 F.4th at 668–69. *Healy* itself confirms that the obligation is universal and comes due *before* trial, explaining that *TransUnion*'s logic "requires unnamed members of a certified class for money damages to demonstrate standing at summary

judgment," 164 F.4th at 705, where each member must show at least "a genuine question of material fact as to the standing elements," *id.* at 709. So *Healy* fixes the deadline before trial, and here the district court issued its decertification decision just before trial. At what other point was the court supposed to address this defect?

Nor is summary judgment the refuge Plaintiffs imagine. The "usual summary judgment standards," *id.* at 703, cannot conjure a genuine dispute for members Plaintiffs' own model affirmatively predicts were never overcharged—and the only method for identifying those members is the one the district court excluded. 1-ER-26. Plaintiffs cannot hide behind the summary-judgment burden. Whatever *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), requires of a defendant at that stage, it is Plaintiffs who must "affirmatively demonstrate" predominance to maintain certification, *Wal-Mart*, 564 U.S. at 350, and Apple's litigation choices at one stage cannot supply the common proof of injury Plaintiffs lack at another.

A never-paid overcharge is not exposure dressed up as harm—it is the absence of the only injury this suit seeks to redress. As the Court put it in *TransUnion*: "[n]o concrete harm, no standing." 594 U.S. at 442.

## III. Certifying a Sprawling No-Injury Class Would Distort the Civil Justice System.

Step back from doctrine to consequences, and the stakes become clearer. In litigation of this scale, certification *is* the case. Certifying a large class "may so increase the defendant's potential damages liability and litigation costs that [it] may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978). "Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011).

Antitrust litigation only sharpens the point: treble damages and sprawling discovery can push defendants "to settle even anemic cases." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). If the threat of discovery alone can do that, certification of a trebled, aggregate class does not pressure settlement; it compels it. The result is what Judge Friendly called "blackmail settlements." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (quoting Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973)).

The numbers here leave nothing to the imagination. A single trial, a single jury, a single question answered for 200 million people—with $60

billion in trebled exposure riding on the answer. Firms, even if confident in their defenses, will often write a check when faced with even the remote possibility of liability on that scale. And when more than ten million of those people were never overcharged at all, the settlement pressure comes not from the merits but from the padding. A rule that certifies a class with millions of uninjured members so long as their overall *percentage* looks small would make the padding routine: every incentive would run toward defining classes broadly, because breadth—not common proof—would set the settlement price.

The concern transcends this Court. Members of the Supreme Court have repeatedly warned that certification "places pressure on the defendant to settle even unmeritorious claims," and that the pressure to settle "may be heightened" when a class action "poses the risk of massive liability unmoored to actual injury." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting). Justice Kavanaugh traced where class-certification leverage often lands: classes "overinflated with uninjured members" threaten liability so massive that businesses settle without regard to the merits, and the costs are passed along to consumers as higher prices, to retirement savers as lower returns, and to workers as lower wages. *Lab'y Corp.*, 605 U.S. at 333

(Kavanaugh, J., dissenting). Plus, an aggregate fund that pays the unharmed either overcharges the defendant or dilutes the recovery of those actually overcharged. Either way, the class device stops compensating and starts redistributing.

Plaintiffs say that a class action is the only way claims worth a few hundred dollars apiece will ever be heard. But Plaintiffs actually jettisoned the claims of millions of low-spending accounts to reduce the percentage of uninjured. If anything, that is a reason for more rigor, not a license to relax it. Rule 23 earns its keep only when it aggregates legitimate claims. A class that folds in millions who were never overcharged does not vindicate small claims; it conjures phantom ones and would pay them from a trebled $60 billion judgment. *Olean* and *TransUnion* demand proof, not promises. The district court held Plaintiffs to their word. So should this Court.

## CONCLUSION

The Court should affirm.

August 19, 2026

Respectfully submitted,

/s/ Cory L. Andrews
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
candrews@wlf.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5,285 words, excluding the items exempted by Fed. R. App. P. 32(f). This amicus brief complies with the word limit of Fed. R. App. P. 29(a)(5). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

/s/ Cory L. Andrews
CORY L. ANDREWS
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

August 19, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-7930

I am the attorney or self-represented party.

**This brief contains** 5,285 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Cory L. Andrews **Date** 8/19/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*