**No. 25-7930**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

IN RE APPLE IPHONE ANTITRUST LITIGATION

On Appeal from the United States District Court
for the Northern District of California
Case No. 4:11-cv-6714-YGR, Hon. Yvonne Gonzalez Rogers

# REPLY BRIEF OF PLAINTIFFS-APPELLANTS

Betsy C. Manifold
Rachele R. Byrd
Stephanie Aviles
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Tel.: (619) 239-4599

Mark C. Rifkin
Matthew M. Guiney
Thomas H. Burt
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600

David C. Frederick
Aaron M. Panner
Kyle B. Grigel
Scott T. MacGuidwin
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900

*Counsel for Plaintiffs-Appellants*

October 2, 2026

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 5

I. The District Court Erred In Decertifying Under *Olean* ........ 5

A. Professor McFadden's Model Satisfies *Olean*, Even Though Individual Class Members Must Establish Net Overcharges To Recover ........ 5

B. The Evidence Established That The Percentage Of Class Members Without Positive Overcharges Is Small ........ 9

C. *Olean* Forecloses Apple's Proposed "Great Number" Test ........ 13

II. Apple's Pre-Trial Requirement That Plaintiffs Identify Class Members Without Measurable Damages Lacks Any Other Basis In Law ........ 16

A. Apple Conflates Antitrust Injury With Damages ........ 17

B. Apple Offers No Legal Support For The Matching Requirement ........ 19

C. Apple Cannot Distinguish Plaintiffs' Authorities ........ 22

III. Plaintiffs Did Not Assume Any Obligation To Match Accounts To Individuals Before Trial ........ 23

A. Apple Fails To Show Waiver ........ 23

B. Plaintiffs Never *Actually* Endorsed The Pre-Trial Matching Procedure ........ 25

C. Apple's Position Promotes Perverse Incentives ........ 27

IV. The District Court Further Erred In Imposing A Certification-Stage Ascertainability Requirement In Violation Of *Briseno* ........ 28

CONCLUSION .......................................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

## CASES

*Aguilar-Turcios v. Holder*, 740 F.3d 1294 (9th Cir. 2014) ....................................22

*Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107 (9th Cir. 2025) ....................................9

*Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ....................................20

*Asacol Antitrust Litig.*, *In re*, 907 F.3d 42 (1st Cir. 2018) ....................................16, 21, 22

*Atlantic Richfield Co. v. USA Petroleum Co*., 495 U.S. 328 (1990) ....................................19

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ....................................6

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ....................................21

*Bowerman v. Field Asset Servs. Inc.*, 60 F.4th 459 (9th Cir. 2023) ....................................22

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ....................................1, 2, 28, 29

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ....................................15, 29

*Claiborne v. Blauser*, 934 F.3d 885 (9th Cir. 2019) ....................................23

*Comet Techs. USA, Inc. v. XP Power, LLC*, 181 F.4th 988 (9th Cir. 2026) ....................................23

*Dairy, LLC v. Milk Moovement, Inc.*, 2023 WL 3437426 (E.D. Cal. May 12, 2023) ....................................19

*Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817 (8th Cir. 2016) ....................................7

*Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) ....................................20

*Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026) ....................................18, 22

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ....................................22-23

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) ....................................23, 25

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ....................................17

*Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925 (4th Cir. 2025) .................................16

*Nexium Antitrust Litig.*, *In re*, 777 F.3d 9 (1st Cir. 2015) .......................................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ......................................................1, 5, 6, 7, 8, 13,
14, 15, 16, 17, 18, 22

*Rail Freight Fuel Surcharge Antitrust Litig.*, *In re*, 934 F.3d 619
(D.C. Cir. 2019) ..........................................................................................9, 16

*Ridgeway v. Walmart Inc.*, 946 F.3d 1066 (9th Cir. 2020).....................................13

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016)..........12, 18, 21

*Solis v. County of Los Angeles*, 514 F.3d 946 (9th Cir. 2008) ................................23

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ..............................................19

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ..................................13, 21

*United States v. Castagana*, 604 F.3d 1160 (9th Cir. 2010)...................................24

*Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023) .................................................9, 18

*Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624 (9th Cir. 2020) ......................28, 29

*Williams v. Apple, Inc.*, 338 F.R.D. 629 (N.D. Cal. 2021) .......................................7

**CONSTITUTION AND RULES**

U.S. Const. art. III ...................................................................................................22

Fed. R. Civ. P.:

Rule 23 .........................................................................................1, 2, 6, 17, 18, 19

Rule 23(b)(3) ...........................................................................................................5

## OTHER MATERIALS

3G Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (May 2026 update) ........................................ 19

1 Newberg & Rubenstein on Class Actions (6th ed.) ........................................ 17

**INTRODUCTION**

The parties agree Rule 23 predominance requires only that the essential elements of class members' claims be "capable of being established through a common body of evidence, applicable to the whole class." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc). They further agree potential challenges in identifying absent class members to allocate damages pose no barrier to satisfying Rule 23's predominance requirement. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). Those principles guide this Court's decision on the core issue separating the parties: whether Plaintiffs' model, which calculates overcharges associated with *every single transaction* in the App Store, must be linked before trial not just to an Apple ID but to the *natural person* who paid the overcharges.

That wrinkle, which rests on how Apple tracks purchases by digital account (Apple IDs), rather than by the purchaser's legal identity, underlies the district court's error. But that feature of the case does not negate class certification. Even without matching accounts to individuals, Plaintiffs' expert (and Nobel laureate) Professor Daniel McFadden produced a model capable of establishing class-wide antitrust injury through common proof. He calculated the total damages that Apple must pay to the class – an amount that will not fluctuate no matter how one matches Apple IDs to individuals. That model enables individual class members to establish

in claims administration which portion of total damages belongs to them. No individualized inquiries are necessary. That establishes predominance.

All liability elements of class members' claims will be calculated on a class-wide basis through common evidence. That is uncontested with respect to the core elements of liability: monopoly power and exclusionary conduct. And, notwithstanding Apple's arguments, it is also true with respect to antitrust injury, however defined. Plaintiffs maintain that all App Store purchasers – who experienced decreased choice, lower quality, and fewer services – incurred antitrust injury. And certainly so did purchasers who paid overcharges on an App Store transaction. Even assuming, however, that a class member must prove net overcharges across all transactions to establish injury, no *individualized* inquiry is required to make that showing. Professor McFadden's model applies to all purchases; injured class members will recover for the damages they incurred; and class members without damages will not recover. Matching purchases to Apple purchasers is not an individualized inquiry in any sense relevant to Rule 23 predominance, as *Briseno* confirms.

Apple cannot defend the district court's action as legally sound. It claims uncertainty over precisely which class members are entitled to damages, but it does not (and cannot) contest that this uncertainty can be resolved at claims administration through class members laying claim to their individual Apple IDs.

Apple had no problem linking Apple IDs to people's credit cards when it took consumers' money for buying apps, and consumers similarly will be able to link their Apple IDs to recover their damages. And because any uncertainty matching Apple IDs to individuals before trial has no effect on calculating damages to the class, such purported uncertainty does not bear on class certification. Apple reiterates the court's speculation that the class may be "overbroad," but it has no response to Plaintiffs' showing that the small percentage of Apple IDs without overcharges – and the minuscule dollar amount of purchases at issue – belies that notion. Apple's claimed uncertainty over matching Apple IDs to individual class members does not materially affect the class-wide damages estimate because the amount of "negative overcharges" is so small.

Apple misleadingly asserts (at 29) that, in the but-for world, "some prices would drop, but many others would stay the same or increase." In fact, the aggregate amount of overcharges was more than **$20 billion**, while the amount of "negative overcharges" is no more than **$32 million**, a 625:1 ratio. Apple does not dispute these calculations. In this case, therefore, "negative overcharges" are simply insubstantial in proportion to overcharges.

Apple relies on Plaintiffs' supposed acquiescence in the district court's matching exercise rather than precedent because no authority supports Apple's arguments. But Apple does not satisfy the requirements for waiver, much less

invited error. Plaintiffs insisted they were not required to match purchases to individual class members until claims administration; only after the court erroneously rejected that argument did Plaintiffs accede to the court's adverse determination. Respectful efforts to comply with the court's unappealable order do not constitute waiver.

Predominance does not demand perfection. The matching exercise the district court ordered could not affect the presentation of evidence at trial. Apple is not precluded from presenting to the jury any issue on liability or damages. Nor will Apple pay any class member who cannot establish, in claims administration, an entitlement to a share of class-wide damages with their Apple ID. The district court's decertification decision is indefensible.

# ARGUMENT

## I. The District Court Erred In Decertifying Under *Olean*

Apple cannot show that Plaintiffs failed to proffer a model "*capable* of establishing antitrust impact [*i.e.*, antitrust injury] for the class as a whole," *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 675 (9th Cir. 2022) (emphasis added), as Rule 23(b)(3)'s predominance inquiry requires, *id*. As Plaintiffs explained (at 33-37), Professor McFadden's model calculates, on a transaction-by-transaction basis, *every* overcharge Apple imposed on every Apple ID. Armed with nothing but the results of the McFadden model and the knowledge of his or her own Apple IDs, each class member could establish the extent of any overcharge. That fact suffices to show "common proof of antitrust impact," no matter how antitrust injury is defined. 31 F.4th at 683. In certifying the class, the district court recognized as much, holding that, even *without* further matching, "Professor McFadden's model can show [and has shown] the impact of Apple's allegedly anticompetitive conduct across all class members." 2-ER-133. Because that conclusion remains correct, this Court should reverse.

### A. Professor McFadden's Model Satisfies *Olean*, Even Though Individual Class Members Must Establish Net Overcharges To Recover

**1.** The district court decertified because Plaintiffs failed – before trial and claims administration – to "match payor records" (through Apple IDs) "to

actual consumers to determine whether the consumer was injured." 1-ER-26. Apple (at 41-44) embraces this holding, arguing that Plaintiffs needed "a classwide way to identify all purchases each class member made across different accounts and using different payment methods and information" and that decertification is proper because "[n]o consumer could prove her injury in an individual case using McFadden's model alone."

Those conclusions conflict with *Olean*. Rule 23 does not require an expert's model – standing alone – to calculate damages on a class-member-specific basis. What matters is whether plaintiffs provide a class-wide *method* for calculating and allocating damages – as here. Because class members here can calculate their individual damages through the "mechanical task" of applying a damages model, *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), to facts obtainable without "individualized mini-trials," *Olean*, 31 F.4th at 682 n.31, predominance is satisfied. In *Olean*, for example, the expert's model aggregated purchases to calculate overall overcharges attributable to the conspiracy; that overcharge percentage could be applied to individual purchasers' "net sales records" to calculate their damages. *Id.* Moreover, when the expert's regression model was applied to individual class members' purchases, some of them (plaintiffs claimed 5.5% and defendants claimed 28%) had no overcharges. *See id.* at 672-73. That fact posed

no problem for predominance because the model was "capable of answering the question whether there was antitrust impact . . . on a class-wide basis." *Id.* at 676.

That is equally true here. Professor McFadden's model can calculate damages associated with each Apple ID, and the claims administrator simply can link that ID to the class member. Apple has offered no response – none whatsoever – to Plaintiffs' repeated showing (at 17, 46-47, 50) that class members can (at claims administration) self-identify which Apple IDs belong to them, including with "receipts" and "affidavits describing their purchases." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 645-46 (N.D. Cal. 2021) (cleaned up); *see*, *e.g.*, *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 831 (8th Cir. 2016). Apple's assertion (at 70) that it does not maintain "a registry revealing which people stand behind billions of purchases" is beside the point: Apple has their credit card numbers; and class members themselves, simply by identifying their Apple IDs during claims administration, can fill any supposed gap in Apple's records.

Apple's attempt (at 56-57) to distinguish *Olean* by arguing that the claim involved a supposedly more straightforward theory of harm is no principled distinction at all. The situation presented in *Olean* is legally indistinguishable in relevant respects from the situation here. In both cases, the plaintiffs' model indicated some class members might lack positive overcharges; in both cases,

the model nevertheless provided a class-wide method both to establish class-wide antitrust injury and to calculate individual damages.[1]

**2.** Apple suggests (at 56) *Olean* supports the decision below because, in this case, the jury will not have evidence allowing it to "match consumers to transactions." But Apple offers no legal reason why matching matters here. Except for the named Plaintiffs, the trial will establish only class-wide damages, not individual damages. As in *Olean*, the evidence is sufficient to permit the jury to find class-wide impact and the amount of class-wide damages (an aggregation of billions of transaction-by-transaction calculations by Apple ID). Allocation of those damages to absent class members based on their Apple IDs after trial requires no additional jury determination. But even if allocating damages did require a jury finding, that determination does not depend on identifying who stood behind each Apple ID. No legal authority undergirds Apple's assertion that individual class members' identities matter when predominance is otherwise satisfied (as it is here).

[1] Apple's criticisms (at 57-58) of Professor McFadden's model as "speculative" and its efforts (at 61-62) to relitigate issues the district court decided in rejecting Apple's *Daubert* challenge are distractions. *See also* Phoenix Ctr. Br. 5-16; ITIF Br. 4-9. The district court accepted Professor McFadden's model, and the model undisputedly permits the calculation of overcharges associated with every transaction at issue in the case. The decertification decision did not question that finding.

**3.** Apple cites no case decertifying a class or denying certification where a model was available to determine claims on a class-wide basis. In *Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023), for example, this Court vacated class certification because the defendant had shown that more than 13,000 refunds were made to fewer than 11,000 class members; determining whether those refunds offset each plaintiff's damages could require "an inquiry into the circumstances and motivations behind each of the 13,680 discounts." *Id.* at 1068-69. Matching purchasers to purchases here requires no such individualized inquiry. Unlike here, in *Ambrosio v. Progressive Preferred Insurance Co.*, 154 F.4th 1107, 1112 (9th Cir. 2025), the plaintiffs offered no class-wide way to determine whether a class member was injured without evaluating the market value of the class member's vehicle and comparing it to the amount the defendant insurer paid. *See id.* (noting plaintiffs would need to *individually* compare the "flawed 'market value' [they paid] with a correct one"); *see also In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869*, 934 F.3d 619, 625 (D.C. Cir. 2019) (plaintiffs "proposed no 'further way' – short of full-blown individual trials" – to *ever* "segregate the uninjured from the truly injured"). This case presents no similar concerns.

**B. The Evidence Established That The Percentage Of Class Members Without Positive Overcharges Is Small**

Apple's principal defense of the decision echoes (at 60-61) the district court's concern that Plaintiffs cannot calculate – before trial and claims

administration – the *precise* "percentage of real-life *class members* who paid more," and thus "'the true number' of uninjured class members." Apple Br. 52 (quoting 4-ER-660). But class certification does not require such precision.

Furthermore, whatever uncertainty exists in this case, the evidence established that the percentage of class members without measurable damages is certainly low, with Apple presenting no contrary evidence at all. As Plaintiffs explained (at 39-41), once they received data from Apple for the entire class period, Professor McFadden showed just 5.1% or 5.8% of accounts without positive overcharges,[2] accounting for no more than 0.4% of ***total*** spending. *Id.* at 39-40. No matter how one pairs Apple IDs to flesh-and-blood people, the volume and magnitude of negative damages could not *possibly* have any material effect on the percentage of individuals without damages. When Dr. Song calculated the corresponding percentages using Apple IDs grouped by payor (using Mr. Thompson's methodology), those numbers were virtually unchanged. *See* 9-ER-1693−1694 ¶¶ 3-5 & fig. 1. Whatever flaws the district court found in Mr. Thompson's methods, Dr. Song's analysis provides additional proof that (1) the percentage of

[2] The difference is whether Professor McFadden accounted for the effect of Apple's price tiers (resulting in the 5.8%) or with flexible pricing (resulting in the 5.1%).

class members without positive damages is low – well below 10% of the class – and (2) those class members account for a tiny proportion of at-issue purchases.[3]

Apple contends that the number of uninjured class members has not been definitively determined, but it never argues that the percentage is – or conceivably could be – unacceptably high. None of its experts has constructed any scenario in which the concededly minuscule negative damages associated with a small percentage of Apple IDs could – once all purchases are assigned – result in an unacceptably high percentage of class members without damages. Apple (at 53, 54, 61) instead harps on the fact that one named class member, Hayter, could not show positive net damages. But no conclusion can be drawn from a sample size of four (of nearly 200 million). On the contrary, the fact that the calculation was done for Hayter using the same transaction-level model shows it can be done for any member of the class.

Apple further argues (at 54) that, without conducting the matching exercise in advance, Plaintiffs cannot know which individuals "meet the $10 spending cutoff" and thus cannot calculate "aggregate damages." Under the class definition's plain terms, the $10 threshold spending requirement applies at the

[3] Apple defends (at 48-49) the district court's exclusion of Dr. Song's supplemental report. But, as Apple recognizes (at 49), that report was excluded chiefly because, *at that time*, there was "no reason" for admitting it, not because it was inadmissible. Exclusion of Dr. Song's report is not independent from the district court's other legal errors.

Apple ID level – not the class-member level – although the district court read it differently. *See* 2-ER-109 ("The Class is limited to those persons who paid more than $10.00 in total to Apple during the Class Period for iOS application and in-app purchases *from any one Apple ID account*.") (emphasis added).

Even on the court's reading of the class definition, however, the impact of any negative overcharges is simply too insubstantial to affect class-wide damages. If Apple IDs with spending below the $10 threshold are grouped together, additional individuals might qualify for inclusion in the class and (conceivably) some will lack positive damages. But none of this affects the calculation of class-wide damages. The McFadden model calculates overcharges at the transaction-by-transaction level for accounts with more than $10 in total spending, and it calculated potential damages of $20.2 or $20.4 billion *regardless* of how Apple IDs may be matched to payors. *See* Pls. Br. 25-26. Again, because any "negative overcharges" are so tiny compared to overcharges, they cannot affect the calculation of total damages. *Cf. Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1140-41 (9th Cir. 2016) (holding predominance satisfied where "partitioning of damages among class members . . . would not impact a defendant's liability for the total amount of damages").[4]

---

[4] Contrary to Apple's suggestion (at 54), class actions commonly prove damages in the aggregate. This Court has accepted the use of "representative evidence as proof of classwide damages," including statistical sampling and

Apple never contested the actual numbers, despite having every means to do so. Accordingly, for present purposes, the undisputed evidence is that class members were overcharged $20.2 or $20.4 billion, while the potential "negative" overcharges were no more than $32 million. That is 16-hundredths of a percent – not even a rounding error and too small to affect any calculation. *See* Pls. Br. 41; *cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 460-61 (2016) (noting that argument the class should not have been certified was "premature" where it was not established that uninjured class members would either "contribute to the size of any damage award" or "recover such damages"). It is as though Professor McFadden accurately measured a room's dimensions to a tape measure's precision and Apple objected over a supposed millimeter-sized error. On the undisputed evidence, Apple's argument is simply not a meaningful challenge to the model's capacity to establish class-wide damages.

### C. *Olean* Forecloses Apple's Proposed "Great Number" Test

**1.** Apple argues (at 60-62) that, even if the percentage of unharmed class members is low, in a large class such as this, that translates into a significant number of people – which somehow defeats predominance. But that argument finds no support in *Olean* and makes no logical sense. Rather, it would render the class-action mechanism useless in precisely the scenarios where it is needed most.

---

extrapolation from class evidence. *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1088-89 (9th Cir. 2020).

For starters, *Olean* expressly rejected any test that would not permit "the certification of a class that potentially includes more than a *de minimis* number of uninjured class members," expressed as a proportion, not absolute numbers. 31 F.4th at 669. That course was "consistent with the approach taken by [various] sister circuits." *Id.* at 669 n.13 (citing cases). And it was core to *Olean*'s holding, as this Court upheld class certification despite the plaintiffs' expert failing to "show" that more than "94.5 percent of the purchasers had at least one purchase above the predicted but-for price," *id.* at 672, and despite the defendants raising credible doubts as to whether 28% of unnamed class members ever paid any overcharge at all, *id.* at 675-76; *see id.* at 685 (Lee, J., dissenting); *see also* Dkt.789 at 26 (crediting this 28% figure).

Furthermore, nothing in *Olean* supports Apple's attempt to superimpose an absolute number limitation. To be sure, this Court stated that, "[w]hen 'a class is defined so broadly as to include a great number of members who for some reason *could not have been harmed* by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.'" 31 F.4th at 669 n.14 (emphasis added; citation omitted). Apple tries to convert *Olean*'s footnote into the numerical limit this Court rejected. The relevant question is not whether 5% represents 500 people or 5 million; it is whether determining their injury introduces individualized merits inquiries that predominate over the common questions.

Here, *all* class members made in-app purchases of more than $10 and thus were exposed to the unlawful conduct. *See infra* pp. 18-19. More importantly, the Court nowhere suggested an absolute "number" of class members rather than a proportion. *See* 31 F.4th at 669-70. The dissent, too, confirms that those jurisdictions applying a "de minimis" test use percentages. *See id.* at 692 (Lee, J., dissenting) (citing cases).

Apple's test would make predominance impossible to satisfy in the very circumstances – large classes of individuals with relatively small damages – in which the class-action mechanism is most vital to ensuring that consumers are compensated and wrongdoers deterred. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005) (per curiam). In rejecting Apple's standard, the district court agreed: "Apple's focus on the number of unharmed members rather than the percentage" makes little sense because, "[g]iven Apple's size, that approach would almost inevitably shield Apple from ever being held accountable for potentially illegal conduct." 6-ER-1092 n.21.

Nor does Apple's "test" have anything to do with the concerns that the predominance inquiry addresses. What matters for class certification is whether plaintiffs have a methodology for litigating relevant issues in a way that will apply across the class and avoid the need for individualized inquiries that overwhelm the

benefits of a class-wide trial. *See Olean*, 31 F.4th at 675. Apple's contrary assertions have no legal or logical support.

**2.** Apple's cases (at 60-61) from other jurisdictions do not support its proposed "great number" test. *See also* Chamber of Commerce Br. 16-18 (raising similar arguments). *Olean* distinguished *Rail Freight* and *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018), noting that neither decision "adopted a per se rule" regarding "uninjured class members"; "[r]ather, based on the particular facts of the cases before them," they held only "that Rule 23(b)(3)'s predominance requirement [wa]s not satisfied when the need to identify uninjured class members" was so pervasive as to "predominate" over common issues. 31 F.4th at 669 n.13; *see also id.* at 692 (Lee, J., dissenting) (noting *Olean* majority *rejected* the approach taken by *Rail Freight* and *Asacol*). And *Mr. Dee's Inc. v. Inmar, Inc.* declined to reverse denial of certification where a high *percentage* of the class lacked injury. 127 F.4th 925, 933-34 (4th Cir. 2025) ("32% of uninjured members in a proposed class" is "too high").

## II. Apple's Pre-Trial Requirement That Plaintiffs Identify Class Members Without Measurable Damages Lacks Any Other Basis In Law

Apple contends that, beyond providing a model "capable of establishing antitrust impact," *Olean*, 31 F.4th at 675, Plaintiffs must "'[*i*]*dentify and exclud*[*e*] uninjured class members' *as of trial*." Apple Br. 41 (quoting 4-ER-701,

2-ER-111−112) (emphases added, brackets in original). That argument finds no support in Rule 23 or any other legal authority.

### A. Apple Conflates Antitrust Injury With Damages

Apple confuses what an individual class member eventually must prove to make a claim out of the damages recovery with what Plaintiffs currently must show about antitrust injury to certify a class. To prove entitlement to a jury-awarded class-wide damages amount, each class member must eventually show (by identifying their Apple ID at the claims-administration stage) that they *personally* paid a net positive overcharge across App Store transactions. But to certify a class, Plaintiffs need only establish that "evidence adduced at trial *may*" permit "a jury finding of antitrust injury to all *or part* of the class." *Olean*, 31 F.4th at 681 n.30 (emphases added).

*Olean* confirms that the presence of class members without damages (what the Court called a lack of "antitrust impact," *id.* at 676) does not defeat predominance unless the class definition is "overbroad" – that is, "'a class is defined so broadly as to include a great number of members who for some reason *could not have been harmed* by the defendant's allegedly unlawful conduct.'" *Id.* at 669 n.14 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)) (emphasis added); *see also* 1 Newberg & Rubenstein on Class Actions § 2:3 (6th ed.) (citing cases) (using same language). The overbreadth

analysis thus asks whether a class includes many individuals who could not *possibly* have suffered an injury because they were not *exposed* to the defendants' unlawful conduct. A class is not "too broad" under Rule 23 if individuals are "exposed to—yet ultimately not harmed by"—specific conduct. *Ruiz Torres*, 835 F.3d at 1136. While mere "exposure" may not constitute "injury" in all cases, "fortuitous non-injury to a subset of class members" cannot "defeat certification." *Id.* at 1136-37. Again, not all individuals ultimately will recover. But that question – "*who* will win or lose at trial" out of all the individuals exposed to the defendants' conduct – is something "Rule 23 does not demand proof of." *Van*, 61 F.4th at 1068-69 (emphasis added).

This class includes no one who was not "exposed to," *Ruiz Torres*, 835 F.3d at 1136, or who "could not have been harmed" by, *Olean*, 31 F.4th at 669 n.14, Apple's allegedly unlawful monopolization. *Every* class member made more than $10 in App Store purchases, so each may seek an appropriate remedy; all who do not opt out will be bound by the jury's determination at trial.[5] And any class members connected to the 0.4% of total spending that lowered costs under Apple's

---

[5] *Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026), did not call this aspect of *Ruiz Torre*s into question. *Contra* CCIA Br. 8-17; Retail Litig. Ctr. Br. 15-20; WLF Br. 21-22. It held only that the decision was "abrogated to the extent [it] would have permitted unnamed class members to go without demonstrating standing at trial *or in any later claims process*." 164 F.4th at 708 (emphasis added).

commission structure ultimately will not recover. But identifying *before trial* who among the hundreds of millions of class members lacks damages will not affect trial – or plaintiffs' ability to satisfy Rule 23 predominance – one whit.

### B. Apple Offers No Legal Support For The Matching Requirement

Apple cannot identify any law that supports the district court's imposition of a pre-trial matching requirement. To be sure, antitrust injury – that is, harm to a party's "business or property by reason of anything forbidden in the antitrust laws," *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 331 n.1 (1990) – is a "core merits issue" and therefore must be established by the class. Apple Br. 65-66; Retail Litig. Ctr. Br. 4-14. But Plaintiffs here propose to establish such injury on a class-wide basis applicable to every individual class member through every single transaction. Even App Store users *without* positive net overcharges suffer from the adverse effects of "reduc[ed] output and innovation," as well as "lower quality and fewer services." *Dairy, LLC v. Milk Moovement, Inc.*, 2023 WL 3437426, at *11 (E.D. Cal. May 12, 2023) (citing cases); *see* 3G Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 391e (May 2026 update). And Plaintiffs' experts have described that injury occurring broadly. *See*, *e.g.*, 10-ER-1732−1742.[6]

[6] Mere "limitation of consumer choice, in itself," may not be a "sufficient *independent* basis for antitrust liability." *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (emphasis added). But Apple's own cases (at 39, 55) recognize

Moreover, even assuming net overcharges are required for antitrust injury, no individualized inquiry is required to resolve this issue for all class members.[7] At trial, Plaintiffs will introduce evidence to prove liability and damages (which Apple will contest). That evidence all applies class-wide – Apple's brief nowhere identifies any individualized defense it will be unable to present (in marked contrast to *Van*, for example, where the defendant's defense depended upon exploring the intent behind individual transactions). No "statutory" or "jury trial" concern is implicated (*cf.* Apple Br. 67; CCIA Br. 21-25) because Apple identifies no issues it cannot present at trial.[8]

---

that harms stemming *from* reduced consumer choice, including "reduced selection" and "poorer service," *are* "conceivable form[s] of injury" under antitrust law. *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008). The Supreme Court's decision in *Apple Inc. v. Pepper*, 587 U.S. 273, 284 (2019), does not rule out this form of antitrust injury. The Court there considered only the "damages" theories Plaintiffs advanced; it never discussed (much less decided) whether individuals without overcharges may have antitrust injury.

[7] Apple hardly disputes that any purchaser who incurred an overcharge – even if that overcharge was somehow offset by other purchases – has incurred an antitrust injury. Instead, it argues waiver (at 40-41). But Plaintiffs entertained Apple's net-damages position *only* "for the sake of argument," before explaining in the next paragraph why it lacked legal support. Pls. Br. 53. Anyway, the argument that antitrust injury does not require netting responds to a possible objection by Apple; it is not an affirmative ground for reversal, and Plaintiffs therefore had no obligation to include it in their opening brief. Nor did Plaintiffs' experts ever endorse a net-damages requirement. *Cf.* Apple Br. 40. Rather, as Professor McFadden stressed, the only truly "unharmed Apple IDs [are] those that are not harmed *for any single transaction*." 4-ER-538 (emphasis added).

[8] Apple claims (at 67) that it "has a right to make the same sort of showing it made for Hayter" for other class members. But that showing requires no

Apple's cited cases (at 66-67) – all from outside this Circuit – support reversal. *Asacol* held it would " 'put the cart before the horse' to read Rule 23 to require that a plaintiff demonstrate prior to class certification that each class member is injured." 907 F.3d at 58 (citation omitted). Instead, plaintiffs need only "enable[ ] the district court to articulate" some type of "plan" as to how defendants, at trial, could challenge injury. *Id.* And the flaws of the plaintiffs' showing in *Asacol* are not present here. First, "proving that the defendant [wa]s not liable to a particular individual" would not "reduce[ ] the amount of the possible total damage." *Id.* at 55. Second, it is not the case that "whether any given individual was injured (and therefore ha[d] a claim) turn[ed] on an assessment of the individual facts concerning that person." *Id.* The total magnitude of damages here has nothing to do with the purchaser's identity, nor does assessing individual damages turn on unique facts requiring mini-trials (rather than facts available to individual class members and provable through affidavits, receipts, and the like). Similarly, in *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005), the district court found that pervasive variations in the amounts paid by individual purchasers made proving injury on a class-wide basis impossible. *Id.* at 572. Again, Apple

---

individualized determination – it simply requires matching purchasers to their purchases. That will happen in claims administration, and Apple's interest will be vindicated because no uninjured class member will recover and the damages model ensures that their purchases do not contribute to the damages amount. *Cf. Tyson Foods*, 577 U.S. at 460-61; *Ruiz Torres*, 835 F.3d at 1140-41.

does not and cannot argue there is any such concern here. Professor McFadden's model calculates Plaintiffs' maximum damages "independent of the number and identity of people harmed." *Asacol*, 907 F.3d at 55. And damages can be calculated without individualized inquiries. *Id.*

Apple also gestures (at 68) at *Healy*. But Plaintiffs explained at length (at 52-55) why that Article III analysis has no bearing on the decertification order below. Apple offers no response.[9]

**C. Apple Cannot Distinguish Plaintiffs' Authorities**

Apple misquotes (at 68) *Bowerman v. Field Asset Services Inc.* as suggesting this Court distinguishes "individual questions going to injury" from individual questions going to damages. 60 F.4th 459, 469 (9th Cir. 2023). *Bowerman* in fact treats them as equivalent: "Rule 23(b)(3) 'requires only that the district court determine . . . whether the common question predominates over any individual questions, including individualized questions about injury *or* entitlement to damages.'" *Id.* (quoting *Olean*, 31 F.4th at 669) (emphasis added). And both *In re Nexium Antitrust Litigation*, 777 F.3d 9, 21-22 (1st Cir. 2015), and *Klay v.*

[9] Apple's allusion (at 28 n.2) to "other arguments for decertification" simply invites this Court to protract already years-long litigation over certification. This Court should reject that invitation and reinstate the district court's previous class-certification order. *See Aguilar-Turcios v. Holder*, 740 F.3d 1294, 1302 & n.11 (9th Cir. 2014) (noting "any defendant" similarly declining to press arguments in the alternative on appeal "must accept the consequences of its litigation strategies").

*Humana, Inc.*, 382 F.3d 1241, 1259-60 (11th Cir. 2004), affirmed class certification in relevant part; to the extent these cases distinguish between injury and damage, they only further undermine Apple's position.

## III. Plaintiffs Did Not Assume Any Obligation To Match Accounts To Individuals Before Trial

Apple's argument that Plaintiffs may not challenge the district court's requirement that they match purchases to purchasers pre-trial – because of "waiver" or "invited error" – fails. Plaintiffs clearly preserved their legal position that the matching exercise never should have been ordered.

### A. Apple Fails To Show Waiver

Case law establishes that demonstrating waiver and invited error requires at least "the intentional relinquishment or abandonment of a known right." *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019) (waiver); *accord Comet Techs. USA, Inc. v. XP Power, LLC*, 181 F.4th 988, 995 (9th Cir. 2026) (invited error). Under either doctrine, parties do not lose their substantive rights when they "attempt[ ]" to perform exercises "at the direction of the district court." *Melendres v. Arpaio*, 784 F.3d 1254, 1264 (9th Cir. 2015). The district court here made clear it would "den[y]" certification unless Plaintiffs promised to try matching. *See*, *e.g.*, 1-ER-2; 2-ER-108; 7-ER-1198. Plaintiffs thus "ha[d] little choice but to accede to the trial court's ruling and participate." *Solis v. County of Los Angeles*, 514 F.3d 946, 956 (9th Cir. 2008).

Plaintiffs previously "made [their] point clear" that they should not have to perform a pre-trial matching exercise, so there could be "no doubt of [their] continuing position." *United States v. Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010). Plaintiffs' opposition to Apple's *Daubert* motion had a section explaining why Plaintiffs "[a]re [n]ot [r]equired to [c]alculate [h]undreds of [t]housands of [i]ndividual [c]lass [m]ember [l]osses [n]ow or at [t]rial," 4-ER-624−627; why Apple's requested matching exercise belonged at claims administration, 4-ER-624 & n.8; and why issues with "apportion[ing] aggregate damages among class members" would not warrant denying certification, 4-ER-626. But the district court rejected that view.

As the court stressed when initially certifying the class, it previously had "advised plaintiffs that [they] could not wait until *after trial* to ascertain which class members were uninjured," 2-ER-111−112, and it would entertain "modification or decertification" if Plaintiffs failed to "match the Apple identification numbers . . . with *actual consumers*," 2-ER-108; *see also*, *e.g.*, 4-ER-701 (March 2022 Initial Decertification Order) (faulting Professor McFadden's model for "not attempt[ing]" to "identify[ ] and exclud[e] uninjured class members . . . until *after judgment* is rendered"). Faced with express threats of decertification if they did not comply, statements acknowledging an obligation

to conduct the ordered matching exercise do not constitute waiver or invited error. *See Melendres*, 784 F.3d at 1264.

### B. Plaintiffs Never *Actually* Endorsed The Pre-Trial Matching Procedure

The handful of statements Apple cites (at 45) were conditional statements of acquiescence that occurred only *after* the district court had ordered the matching exercise and were conditional upon the district court requiring it. For example, Plaintiffs' counsel stated Plaintiffs were "happy to" undertake a matching exercise *only* "[i]f your Honor wants it done before trial." 2-ER-228 at 93:10-25 (June 2023 Hr'g Tr.); *see id.* ("*If* the Court wants us to do that matching before trial, we'll do that matching before trial.") (emphasis added). Plaintiffs' passing observation in a footnote – "the district court found . . . any uninjured class members will be precisely identified before trial," No. 24-875, Dkt.12.1 at 18 n.3 – likewise occurred *after* the district court had ordered matching and reflected what the district court had required, not what Plaintiffs deemed appropriate or necessary.

Similarly, Plaintiffs never conceded the district court should decertify if it excluded Mr. Thompson or that any matching had to occur before trial. At most, they didn't "dispute that" the *current* "methodology that [Plaintiffs have] used" for "identifying the uninjured and injured[ ] relies on Mr. Thompson's matching." 7-ER-1198 at 32:11-15 (Oct. 2025 Hr'g Tr.). If general in-court statements like that support waiver or invited error, Apple is in a glass house. After all, Apple

represented to the district court that linking accounts to people was *not* "a pertinent issue," in its view, "for class certification." 4-ER-663 at 13:8-21 (Apr. 2022 Hr'g Tr.). Its brief on appeal represents a dramatic about-face from that view.

To be sure, Plaintiffs underestimated the challenges associated with conducting the pre-trial matching exercise solely because they did not anticipate the difficulties of obtaining data from Apple.[10] *See*, *e.g.*, 2-ER-227–228 at 92:22-93:25 (stating this "ha[s] to happen before we can do that mechanical process"); 4-ER-658–659 at 8:25-9:6 (offering to do the matching "as early as possible now *if* we can get the data from Apple") (emphasis added). Apple affirmatively misled Plaintiffs, including by representing that a field in its productions contained "hash values of *only* the last four digits of credit card numbers." 6-ER-1049 n.1 (emphasis added). Apple then imposed unreasonable restrictions on Mr. Thompson's work, *see*, *e.g.*, 2-ER-70–72; serially delayed its productions, *see*, *e.g.*, 12-ER-2213–2214; and included junk data such as unreadable hash strings, *see*, *e.g.*, 12-ER-2212.

[10] Apple (at 69-70) walks back its prior representations that it can match Apple IDs to individuals. But even now, Apple picks its words carefully. It avoids representing that *it* could not identify the individuals standing behind transactions, instead stressing (at 70) it warned Plaintiffs that "the matching exercise was no trivial task"; it does not *currently* maintain "a registry revealing which people stand behind billions of purchases"; and Apple does not have the burden to assist Plaintiffs by "creating better data" or "'implement[ing]' their model itself" (brackets in original). Claims administration, however, can rely on class members to provide data and permission for access to data that Apple has refused to reveal on privacy grounds.

When Plaintiffs objected, Apple failed to timely respond. 7-ER-1260. As the district court noted: "Apple should have accurately transmitted the information and affirmatively corrected consumer plaintiffs' understanding of the data that Apple produced," 1-ER-23 n.19, yet it failed to do so.[11]

### C. Apple's Position Promotes Perverse Incentives

The point is not that Apple's sharp-elbowed tactics provide an independent basis for reversal. Plaintiffs stand by their litigation choices. But these facts provide additional reasons why the district court's procedure is ill-advised. Defendants in Apple's position are incentivized to do exactly what Apple did here. If undermining the efforts of a plaintiff class to identify its members pre-trial provides an exit ramp from trial, no defendant will resist the invitation to try. The consequences are needless and costly litigation at best, and manipulation of underlying business records and deliberate obfuscation at worst. No legitimate interest would be served.

---

[11] Apple argues (at 69-70) Mr. Thompson had his chance and simply did poor work. But its critiques (many of them invalid) have no legal bearing on whether that matching exercise was required. That Mr. Thompson made limited use of certain "publicly available data" from the Postal Service and "outsourced certain" work hardly establishes that a claims administrator could not make use of *other* publicly available data or Apple data (with its full cooperation). Nor would Plaintiffs need to rely, at claims administration, exclusively on Apple's data and expert analysis to perform the matching – they could ask class members for information, as is typical in class cases. *See supra* pp. 5, 7, 17.

## IV. The District Court Further Erred In Imposing A Certification-Stage Ascertainability Requirement In Violation Of *Briseno*

Apple does not dispute that, to the extent the district court required matching simply to identify class members, it erred in imposing the very certification-stage ascertainability requirement this Court rejected in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). *See* Pls. Br. 47-52. And Apple cannot overcome that error by arguing (at 64) there is a difference between a "freestanding" ascertainability requirement and a "non-freestanding" one. The district court concluded Mr. Thompson's work was not "relevant to this case *because* it does not identify payors." 1-ER-23 (emphasis added). And it excluded Mr. Thompson (and then decertified the class) *because* Mr. Thompson did "not *identify* injured class members." 1-ER-27 (emphasis added). That's the language of ascertainability, not predominance.

In suggesting the district court's concerns about administrability of the class might support its decertification order, Apple cites only one supporting case (at 64-65): *Walker v. Life Insurance Co. of the Southwest*, 953 F.3d 624 (9th Cir. 2020). But that decision confirms the inappropriateness at class certification of " 'consider[ing] the administrative burdens of class litigation in a vacuum,' " rather than engaging in " 'a comparative assessment of the costs and benefits of class adjudication, including the availability of other methods for resolving the controversy.' " *Id.* at 633 (quoting *Briseno*, 844 F.3d at 1128) (cleaned up).

Apple agrees (at 65, emphasis added) that imposing a "*separate* administrability requirement" violates *Briseno*.

Here, the decertification order never so much as considers, much less weighs, any "benefits of class adjudication" or "the availability of other methods for resolving the controversy." *Walker*, 953 F.3d at 633. Had it done so, the district court necessarily would have reached a different result. As Plaintiffs explained (and as Apple failed to refute), the low individual value of each class member's claims here would render any sort of non-class resolution impossible. *See* Pls. Br. 31 (citing *Chamberlan*, 402 F.3d at 957).

*Briseno* recognizes that courts have a "variety of procedural tools" to ultimately identify class members without damages at the claims-administration stage. 844 F.3d at 1128, 1131. Apple has no answer to the battery of cases Plaintiffs cite (at 47-50) confirming that the successful use of those tools can permit class actions like this one to proceed past class certification and to trial. And each of its explanations (at 68-70) as to why this class "could not be sustained even if only damages were at issue" comes up short.

Indeed, adopting Apple's position would foreclose virtually any future class actions against large technology companies. Where such companies are accused of wrongdoing, consumer classes *usually* will number in the millions and damages often will be measured in the billions. At least *some* percentage of the class may

be fortuitously uninjured, and identifying those individuals by name (rather than by account or payment method) typically will present challenges. This Court never has treated those facts as obstacles to class-action litigation. It should not change course now.

## CONCLUSION

This Court should vacate the district court's decertification order, reinstate the class certification, and remand for further proceedings.

Date: October 2, 2026

Respectfully submitted,

*/s/ David C. Frederick*

David C. Frederick
Aaron M. Panner
Kyle B. Grigel
Scott T. MacGuidwin
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
dfrederick@kellogghansen.com
apanner@kellogghansen.com
kgrigel@kellogghansen.com
smacguidwin@kellogghansen.com

Betsy C. Manifold
Rachele R. Byrd
Stephanie Aviles
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Tel.: (619) 239-4599
manifold@whafh.com
byrd@whafh.com
saviles@whafh.com

Mark C. Rifkin
Matthew M. Guiney
Thomas H. Burt
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the word limit of Ninth Circuit Rule 32-1(b) because it contains 6,903 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Ninth Circuit Rule 32-1(c).

I further certify that the foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point, Times New Roman font.

/s/ *David C. Frederick*
*Counsel for Plaintiffs-Appellants*

October 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of October 2026, I caused the foregoing **Reply Brief of Plaintiffs-Appellants** to be submitted electronically with the Clerk of the Court through the Court's appellate ECF system.

/s/ *David C. Frederick*
*Counsel for Plaintiffs-Appellants*